Argued and submitted January 19, decision of Court of Appeals and judgment of trial court affirmed May 17, 1988

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## AUDREY MARIE CLICK,
*Petitioner on Review.*

(TC M762870; CA A43520; SC S34535)

755 P2d 693

Garrett A. Richardson, Portland, filed the petition for review and argued the cause for petitioner on review.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Charlene Woods, Assistant Attorney General, Salem.

CAMPBELL, J.

Lent, J., dissented and filed an opinion in which Linde, J., joined.

## CAMPBELL, J.

In *State v. DeMello,* 300 Or 590, 716 P2d 732 (1986), this court held that a defendant charged with driving while suspended may not prevail on an affirmative defense based on his lack of notice of the suspension when the evidence revealed that the defendant received a pink slip informing him that the post office was holding a certified letter for him. The question in this case is which side has the burden of proving whether or not the defendant received a pink slip when an affirmative defense is raised. We agree with the trial court and the Court of Appeals that the burden is on the defendant.

The defendant was arrested for driving while suspended. At trial, the parties stipulated that the defendant was driving on a public highway while her license was suspended. The defendant testified that she did not know her license was suspended until she was arrested. The state's evidence included the suspension letter in an envelope marked "unclaimed." Neither side introduced evidence on whether the defendant received a pink slip.[1]

After a trial to the bench, the judge issued the following findings of fact:

"(1)   There is no evidence that Defendant had actual knowledge of the suspension;

"(2)   There was no evidence of a 'refusal,' simply of an 'unclaimed' notice;

"(3)   The notice was returned by the Postal Service to [Motor Vehicles Division] as unclaimed;

"(4)   There was no testimony concerning postal practices as to unclaimed mail;

"(5)   There was no testimony concerning pink slips;

"(6)   The notice was mailed to the correct address, the Defendant still to this day lives at that address;

"(7)   The Defendant did not receive her copy of the actual suspension order since it was returned unclaimed to Salem;

"(8)   The state proved both driving and a suspension in effect at the time of the citation."

---

[1] A pink slip is a document left by the United States Postal Service as notice that the post office is holding a certified letter addressed to that postal service patron.

The trial judge concluded that the defendant "did not establish by a preponderance of the evidence that she did not receive the pink slip from the U.S. Post Office that someone was trying to deliver a registered letter," and therefore, "[a]s a matter of law, Defendant did not meet the burden of the affirmative defense." The defendant was found guilty of driving while suspended in violation of *former* ORS 811.175. The Court of Appeals held that evidence supported the trial court's findings and upheld the verdict of the trial court. *State v. Click,* 87 Or App 272, 742 P2d 67 (1987). We affirm.

At the time of the defendant's arrest, *former* ORS 811.175[2] provided in relevant part:

"(1)   A person commits the offense of driving while suspended or revoked or in violation of an occupational or probationary permit if the person does any of the following:

"(a)   Drives a motor vehicle upon a highway during a period when the person's driving privileges or right to apply for driving privileges have been suspended or revoked in this state by a court or by the division."

■      Although driving while suspended is a strict liability offense, drivers who were not notified of the suspension may raise an affirmative defense under ORS 811.180. *State v. Buttrey,* 293 Or 575, 651 P2d 1075 (1982). The affirmative defense statute provided in relevant part:

"(1)   In addition to other defenses provided by law, including but not limited to ORS 161.200 [choice of evils], it is an affirmative defense to ORS 811.175 that:

"* * * * *

"(b)   The defendant had not received notice of the defendant's suspension or revocation or been informed of the suspension or revocation by a trial judge who ordered a

---

[2] In 1987, the legislature amended the law of driving while suspended. Or Laws 1987, ch 730, §§ 1-3a, 20. ORS 811.175 still establishes the elements of driving while suspended and these elements were not changed in 1987. Under most circumstances, however, driving while suspended is now a Class A traffic infraction, ORS 811.175(4). Driving while suspended is a crime only if the defendant violates ORS 811.175 and the defendant's license was suspended or revoked for one of the reasons listed in ORS 811.182(3) and (4). When the defendant was arrested, driving while suspended was either a Class A misdemeanor or a Class C felony, depending on the reason for the suspension. *Former* ORS 811.175(4).

suspension or revocation of the defendant's driving privileges or right to apply." *Former* ORS 811.180 (1985).[3]

Service of notice must be accomplished by either personally serving the suspension notice on the driver, ORS 809.430(3)(b), or "mailing the notice by certified mail, restricted delivery, return receipt requested, to the person's address as shown by division records," ORS 809.430(3)(a).

In *State v. DeMello, supra,* we examined the role that a pink slip plays in the statutory scheme for providing notice to suspended drivers under *former* ORS 482.570.[4] There, the defendant claimed that he did not receive actual notice of the suspension, but he did not dispute receiving a pink slip delivered in connection with the suspension letter. He argued that the state established his affirmative defense by introducing into evidence the certified letter of suspension on which the post office had stamped "unclaimed." According to the defendant, the "unclaimed" notation demonstrated that he did not receive notice of the suspension and his burden of establishing the "no notice" affirmative defense was met.

The issue presented in *DeMello* was

"whether the state proves notice by showing that defendant received a pink slip notification that certified mail is waiting

---

[3] The affirmative defense provision of ORS 811.180 was amended slightly in 1987. As codified, ORS 811.180(1) now reads:

"In addition to other defenses provided by law, including but not limited to ORS 161.200, it is an affirmative defense to the offenses described in ORS 811.175 and that:

"* * * * *"

Corresponding language in the 1987 Oregon Laws reads:

"(1) * * * it is an affirmative defense to the offenses described in ORS 811.175 *and section 3 of this 1987 Act that:* * * *." Or Laws 1987, ch 730, § 20 (emphasis added).

Section 3 of the 1987 Act defining criminal driving while suspended is codified at ORS 811.182. It appears that the current codification of ORS 811.180(1) inadvertently omits reference to "ORS 811.182" between the words "and" and "that" in the last line of the subsection.

[4] In 1983, the legislature amended the motor vehicle code and renumbered its provisions. Or Laws 1983, ch 338. The notice provision of *former* ORS 482.570 is now codified at ORS 809.430. *Former* ORS 487.560, which established the affirmative defense, is now codified at ORS 811.180. *See also,* note 5, *infra.* The amended statutes are set forth in the text at 614-15. Although these amendments came prior to the *DeMello* decision, *DeMello* interprets the pre-1983 statutes. *State v. DeMello,* 300 Or 590, 593 n 2, 716 P2d 732 (1986).

for him at the post office, and whether defendant's affirmative defense fails if the evidence reveals that he received the pink slip even though no other evidence shows that he ever physically received the letter of suspension from the division."

At the time relevant to the *DeMello* decision, the affirmative defense statute required the defendant to show that he "had not received notice of the defendant's suspension or revocation as required by ORS 482.570." *Former* ORS 487.560.[5] We focused our analysis on what notice was required under *former* ORS 482.570.

A review of the statutory language and relevant legislative history revealed that "the legislature did not intend that the defendant need actually receive the suspension letter, open it and read it before notice was deemed satisfied." *State v. DeMello, supra,* 300 Or at 596. All that the statute required was sending the suspension letter by certified mail, restricted delivery, return receipt requested to the address of record. Delivery of a pink slip, not just the delivery of the suspension letter, would result in full compliance with this requirement. When the defendant received a pink slip, he received the notice required by statute. *Id.* Therefore, the defendant's affirmative defense failed. *Id.* at 600.

Seeking to square this case with *DeMello,* the state urges this court to take judicial notice of postal regulations requiring mail carriers to leave a pink slip when the addressee of a certified letter is unavailable to accept delivery.[6] According to the state, by taking judicial notice, the provisions of OEC 311(1)(j), (m) and (q) would allow us to infer that postal officials delivered a pink slip to the defendant. This case

---

[5] The 1983 revision of the motor vehicle code, *see* note 4, *supra,* reworded the affirmative defense statute and eliminated the phrase "as required by ORS 482.570." Or Laws 1983, ch 338, § 599. The language of the statute as amended is set forth in the text at 614-15. Ordinarily, the new language would signal a change in the meaning of the statute. However, the new language was not intended to alter the meaning of the code provisions or to change existing law, but was included merely to "make the law relating to vehicles easier to use, amend and understand by simplifying the language, * * * eliminating confusing references, eliminating verbiage, eliminating some confusing use of terminology and standardizing the presentation of prohibitions and penalties, all in accordance with existing interpretation and use of the vehicle code * * *." Or Laws 1983, ch 338, § 3. Therefore, the amendments do not affect the statutory interpretation in *DeMello.*

[6] OEC 202(4) provides for judicial notice of "Regulations, ordinances and similar legislative enactments issued by or under the authority of the United States * * *."

would then be indistinguishable from *DeMello* because of the unrebutted inference that the defendant in this case received a pink slip. However, the prosecutor did not request the trial court to take judicial notice of postal practices and the trial court did not take judicial notice on its own motion. We decline to take judicial notice at this stage of the proceedings and therefore we must determine who had the burden of proving whether or not the defendant received a pink slip.

Language at page 600 of the *DeMello* opinion is particularly helpful in determining who has the burden on the pink slip issue. We reasoned that because the defendant must show that he did not receive the notice required by statute, and because a pink slip constitutes the notice required by statute, the affirmative defense "place[s] the burden on the defendant to prove that he did not receive notice of the certified mail." *State v. DeMello, supra,* 300 Or at 600. Counsel has offered no reason to retreat from this analysis.

Instead of challenging the reasoning of *DeMello* or the application of *DeMello* to this case, the defendant relies on language in the *DeMello* opinion which could be interpreted as suggesting that proof that the defendant received a pink slip is part of the state's ORS 811.180(2) burden of disproving the affirmative defense. ORS 811.180(2)(a) provides:

> "The affirmative defenses described in this section are not available to a defendant under the circumstances described in this subsection. Any of the evidence specified in this subsection may be offered in the prosecution's case in chief. This subsection applies if any of the following circumstances exist:
>
> "(a)   The defendant refused to sign a receipt for the certified mail containing the notice of suspension or revocation."

At page 599 of the *DeMello* opinion, we stated:

> "We discern no significant legal difference between 'refusing' a letter from the division and 'failing' to claim a certified letter after being notified that the certified letter awaits pickup. The suspended driver cannot defeat the purpose of the statute by either ploy."

According to the defendant, this passage means that failing to claim certified mail has the same legal effect as refusing delivery of the suspension letter, and therefore proof that the defendant failed to claim his suspension letter falls within the state's burden of defeating the affirmative defense

under ORS 811.180(2)(a). If proving that the defendant failed to claim the certified letter after receiving a pink slip is the state's burden, then, under the defendant's reasoning, part of that burden would be proving that the defendant received a pink slip.

Besides ignoring the holding of *DeMello,* the defendant reads the language of *DeMello* out of context. The quoted text is a comment on the legislature's efforts to avoid the problems associated with placing the burden of notice on the state. The legislature shifted the burden to eliminate the problems caused by requiring the state to prove notice when so many suspension letters were being returned undelivered. When we stated that there is no significant difference between refusing the letter and failing to claim the letter, we were merely recognizing that letters are returned undelivered whether they are refused or unclaimed, and, for both situations, the legislature intended that the notice requirement would be satisfied even though the suspension letter was not actually delivered. Nothing in the opinion implies that the burden shifts to the state to prove that the defendant received a pink slip but failed to claim the letter. We hold that the burden properly rests with the defendant.[7]

*Former* ORS 811.180 required the defendant to show that she did not receive notice of the suspension to establish her affirmative defense.[8] Under *DeMello,* a pink slip constitutes notice of the suspension. Therefore, we hold that the defendant must show she did not receive a pink slip as well as the suspension letter in order to prevail on her affirmative

---

[7] A statement in the minutes to the 1975 Senate Judiciary Committee hearing on the proposed motor vehicle code supports our conclusion that the defendant has the burden of showing that she did not receive a pink slip. Jackson Frost, speaking on behalf of the District Attorney's Association, testified that under the proposed revision, "you would not need the postman, or the DMV or the judge to come and testify about the case." Minutes, Senate Committee on Judiciary 12 (January 23, 1975). The defendant can easily testify that she never received a pink slip, if that is the case. If the state introduces evidence that a pink slip was delivered or if the trial court takes judicial notice of postal procedures, the defendant's testimony that she did not receive a pink slip would raise a question of fact.

[8] The dissenting opinion is based upon the premise that a defendant cannot be convicted of driving while suspended unless the state shows something more than the fact that the defendant's license was suspended and she was driving on a public highway. *State v. Buttrey,* 293 Or 575, 651 P2d 1075 (1982) and *State v. DeMello,* 300 Or 590, 716 P2d 732 (1986) expressly reject the dissent's position.

defense of lack of notice of the suspension. Because the defendant did not introduce any evidence that she did not receive a pink slip, she did not meet the burden of establishing her affirmative defense and her conviction must stand.

The decisions of the Court of Appeals and the trial court are affirmed.

**LENT, J.,** dissenting.

In *State v. Buttrey,* 293 Or 575, 651 P2d 1075 (1982), this court held by a bare majority of four to three that one can be convicted of the crime of "driving while suspended" even though the defendant did not know of the suspension. In *State v. DeMello,* 300 Or 590, 716 P2d 732 (1986), by a majority of four to two, the court held that under the statutory scheme involved here a person who does not respond to a notice from the postal carrier that certified mail for the person is waiting at the post office is guilty of "driving while suspended" even though there is nothing whatsoever to show that the person knew from whom the mail came and therefore could not be guilty of refusing mail from the Motor Vehicles Division.

Although I was one of the dissenters in those two cases and still believe the decisions were wrong, I would not write to dissent in this case if only the same points were involved because of the rule of *stare decisis. State v. Clevenger,* 297 Or 234, 244, 683 P2d 1360 (1984). I dissent here because the court now holds that it does not make any difference that one charged with this crime is not shown to have received a notice that certified mail awaits at the post office. As the majority acknowledges, 305 Or 611, 755 P2d 693 (1988), "Delivery of a pink slip, not just the delivery of the suspension letter, would result in full compliance" with the Division's obligation to send a "suspension letter by certified mail, restricted delivery, return receipt requested to the [defendant's] address of record."

The majority opinion quite rightly refuses the invitation to take judicial notice that postal regulations require mail carriers to leave a "pink slip" when the addressee is unavailable to accept delivery. That being so, the record in the case at bar doesn't even have any evidence of what a "pink slip" is, let alone what it does. As the trier of fact found:

"4)   There was no testimony concerning postal practices as to unclaimed mail;

"5)   There was no testimony concerning pink slips[.]"

*DeMello* holds that the delivery of the "pink slip" to a defendant's correct address satisfies the Division's statutory obligation to give notice of suspension. Today's opinion holds that neither delivery of the notice nor delivery of a "pink slip" is required to satisfy that obligation.

Under the majority opinion, if a defendant were to testify that she neither received notice nor a pink slip and that testimony were uncontradicted, there would still be a question for the trier of fact whether the state has proved its case beyond a reasonable doubt. In other words, the state would be entitled to go to the jury without one iota of evidence that a "pink slip" was ever delivered to defendant's address. I cannot conceive that a rational trier of fact on that evidentiary record could find beyond a reasonable doubt that all elements of the crime have been proven. *Jackson v. Virginia,* 443 US 307, 99 S Ct 2781, 61 L Ed 2d 560 (1979), and *State v. Harris,* 288 Or 703, 609 P2d 798 (1980).

If the majority today is correct, *DeMello* need never have been written. There the court held that delivery of a "pink slip" is sufficient for conviction; here the court holds that it is not at all necessary that a "pink slip" be delivered. Under my hypothetical posed in the preceding paragraph, the state wins even if the only evidence before the trier of fact is that nothing was delivered.

It must be emphasized that we are speaking of procedures that lead to prosecution and conviction of a felony, not a mere administrative loss of a license. It remains incredible to me that the legislature ever intended to shift to a defendant the burdens of proving herself innocent of a felony.

I dissent.

Linde, J., joins in this dissenting opinion.